IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| LINDA CULLARS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 108-148 |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security Administration, | ) ) | |
| | ) | |
| Defendant. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Linda Cullars ("Plaintiff"), appeals the decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS**, pursuant to sentence four of 42 U.S.C. § 405(g), that the Commissioner's final decision be **REVERSED** and that the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

I.  **BACKGROUND**

Based upon claims of disability dating back to November 18, 2004, Plaintiff applied for SSI with a protective filing date of November 29, 2004. Tr. ("R") 18. The Social

Security Administration denied her claim initially and on reconsideration. R. 27, 37. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), and on February 5, 2008, the ALJ held a hearing at which Plaintiff testified and was represented by an attorney. R. 305-27. The ALJ then issued an unfavorable decision dated April 24, 2008. R. 18-24. Applying the sequential process required by 20 C.F.R. § 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

2. The claimant has the following severe impairments: diabetes mellitus with polyneuropathy (20 C.F.R. § 416.920(c)).

3. These medically determinable impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 416.920(d), 416.925 and 416.926).

4. The claimant has no past relevant work (20 C.F.R. § 416.965), but she has the residual functional capacity ("RFC") to perform the full range of medium work.[1]

5. Based on a residual functional capacity for the full range of medium work, and the claimant's age, education, and work experience, a finding of "not disabled" is directed by Medical-Vocational Rule 201.27. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 C.F.R. § 416.920(g)).

R. 19-23.

When the Appeals Council ("AC") denied Plaintiff's request for review, the Commissioner's decision was "final" for the purpose of judicial review under 42 U.S.C. § 405(g). Having failed to convince the AC to review her case, Plaintiff filed this civil action

---

[1] Medium work involves "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 416.967(c).

2

in the United States District Court for the Southern District of Georgia requesting that the case be remanded to the Commissioner for further consideration. Plaintiff argues that the ALJ erred in disregarding her treating physician's opinion, erred in relying on the state agency physician's determination of RFC given that the ALJ disregarded the treating physician's opinion and no other medical opinion was available, and erred because he failed to consider the side effects of Plaintiff's medications. (See generally Pl.'s Br.).

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such

relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III. DISCUSSION

#### A. Alleged Error in Disregarding the Treating Physician's Opinion

Plaintiff first argues that "the ALJ erred in disregarding the treating physician's opinion." (Pl.'s Br., pp. 8-11). The Commissioner contends that the ALJ did not disregard the treating physician's opinion, but rather, provided a thorough rationale for giving the opinion little weight. (Comm'r. Br., p. 6). The Commissioner has the better argument.

4

On March 9, 2006, Dr. Kirk, Plaintiff's treating physician, filled out an RFC questionnaire. R. 189-192. Dr. Kirk found, among other things, that Plaintiff was "incapable of even low stress jobs," was limited to lifting less than 10 pounds occasionally, was capable of standing/walking for less than a two hour maximum, was capable of sitting for less than a two hour maximum, and could occasionally stoop but could never crouch/squat or climb ladders or stairs. R. 190-91. However, the ALJ concluded that the degree of limitation that Dr. Kirk attributed to Plaintiff exceeded the degree of limitation established by the medical record. R. 21. Plaintiff argues that if the ALJ had properly accepted Dr. Kirk's opinion, the ALJ would have concluded that Plaintiff was disabled.

Plaintiff specifically contends that the ALJ's conclusion that Dr. Kirk's opinion was "wholly conclusory, and extremely or wildly disproportionate with the clinical evidence" (R. 22), only focused on "comparative words, [that] have no meaning in objectively describing the claimant's impairments as it relates to the definitions of disability under social security law." (Pl.'s Br., p. 9). For example, Plaintiff states that the ALJ determined that Dr. Kirk's opinion was inconsistent with Dr. Kirk's own notes because the notes provided that Plaintiff was "doing much better with her legs" and that her "sugars are excellent and she is doing well." (Id.). However, Plaintiff argues that although she "may have been doing much better as compared with [how she was doing at a previous appointment], that does not mean that her condition was so much improved that it rendered her no longer disabled." (Id.).

In the Eleventh Circuit, a treating physician's opinion must be given substantial weight. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986) (*per curiam*). Refusal

5

to give a treating physician's opinion substantial weight requires that the Commissioner show good cause. Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987). "The [Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986). The Commissioner, however, is not obligated to agree with a medical opinion if the evidence tends toward a contrary conclusion. Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (*per curiam*). Indeed, a treating physician's opinion may be properly discounted if it is unsupported by objective medical evidence, is merely conclusory, or is inconsistent with the physician's medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991).

Here, as noted above, Plaintiff challenges the ALJ's determination that Dr. Kirk's opinion was not supported by the record, and thus Plaintiff maintains that the ALJ improperly disregarded Dr. Kirk's opinion. (Pl.'s Br., pp. 8-11). Contrary to Plaintiff's allegation, the ALJ did not disregard Dr. Kirk's opinion; rather, he clearly articulated his reasons for discrediting the opinion. The ALJ substantiates his decision to discredit Dr. Kirk's opinion by explaining that Plaintiff's counsel submitted a check-off-the-box form completed by Dr. Kirk wherein he provided that Plaintiff had difficulty walking, she could not walk even one block, she could only sit stand or walk for less than two hours in eight-hour day, she was incapable of even low stress jobs, and she was otherwise limited to less than sedentary work. R. 21. The ALJ found no clinical evidence cited by Dr. Kirk in support

of his opinion as to Plaintiff's RFC. (Id.). The ALJ then pointed to Dr. Kirk's actual clinical records and found that the records showed that Plaintiff's sugars were excellent and that she was doing well. (Id.). Furthermore, the ALJ found that Dr. Kirk's records provided that Plaintiff had "no edema, good range of motion, strength 4+ and despite a diagnosis of neuropathy, DTR 2+ bilaterally." (Id.). Therefore, the ALJ concluded:

> Because Dr. Kirk's assessment is conclusory and not supported by review of his clinic notes or any other evidence of record, it cannot be given controlling or even substantial weight. Whatever, the degree of actual limitations, it is clearly not as fully and drastically limited as estimated by Dr. Kirk. This estimate is so wildly disproportionate with the objective evidence that it offers no assistance in determining an actual level of impairment.

(Id.).

The ALJ also pointed out that at the time Dr. Kirk completed his opinion concerning Plaintiff's RFC, March 9, 2006, his clinical records only ran through July 2005. R. 22. Additionally, by the time the hearing was held, Plaintiff's counsel had provided medical records from the Medical College of Georgia through April 2007; however, Dr. Kirk's records only ran through July 2005. (Id.).

As noted above, a treating physician's opinion may be properly discounted if it is unsupported by objective medical evidence, is merely conclusory, or is inconsistent with the physician's medical records. In this case the ALJ found, and the substantial evidence supports, that Dr. Kirk's opinion was unsupported not only by his own clinical records, by the other opinions submitted by the reviewing physicians, as well as Plaintiff's testimony. R. 21-22. Indeed, the record contains and the ALJ relied on, among other medical records, for example, an EMG study dated October 10, 2005 that showed generalized sensory motor polyneuropathy secondary to Plaintiff's diabetes mellitus. R. 22. The ALJ also notes that

7

while there is evidence of generalized sensory motor polyneuropathy secondary to Plaintiff's diabetes mellitus when Dr. Kirk treated Plaintiff on March 30, 2005 with Neurotin, Dr. Kirk's records for Plaintiff's follow-up appointment on April 13, 2005 reported that Plaintiff was doing much better with her legs. (Id.). Furthermore, the ALJ maintains that Plaintiff's list of current medications did not reflect that Plaintiff was being treated for generalized sensory motor polyneuropathy secondary to Plaintiff's diabetes mellitus. In addition, on June 6, 2006, Plaintiff underwent a thyroid evaluation, at the evaluation, she denied any numbness, tingling or decreased sensation, and a neurological exam showed 2+ DTR. (Id.). In sum, although it is true that Dr. Kirk is properly labeled as a treating physician by virtue of his on-going relationship with Plaintiff, the fact is, as the ALJ pointed out and as was discussed above, his opinion was not supported by the medical evidence in the record.

Furthermore, Plaintiff also misses the mark arguing that the ALJ erred in disregarding Dr. Kirk's opinion, where his was the sole source of medical evidence relating to her impairing conditions. (Pl.'s Br., pp. 12-13). Notably, the record contains, and the ALJ's opinion references the opinions of reviewing physicians (Luis Suarez, Jr., MD.,[2] and David Maxwell, M.D) that concluded that Plaintiff was capable of performing medium work. R. 140-55. Although Plaintiff maintains that these reviewing physician's opinions should only be entitled to little weight and taken alone should not constitute substantial evidence to support an administrative decision (Pl.'s Br., p. 12), the Commissioner's regulations require

---

[2]The ALJ refers to Dr. Suarez as a State Agency physician. R. 21-22.

that the opinions of examining physicians be given more weight than non-examining physicians, the opinions of treating physicians be given more weight than non-treating physicians, and the opinions of specialists (on issues within their areas of expertise) be given more weight than non-specialists. See 20 C.F.R. § 416.927, (5). Indeed, according to Social Security Ruling 96-6p, findings of fact made by State Agency medical consultants regarding the nature and severity of an individual's impairments must be treated as expert opinion evidence of a nonexamining source at the ALJ and AC levels of administrative review.

Thus, contrary to Plaintiff's assertion, it was not error for the ALJ to give greater than "little weight" to the opinions of the reviewing physicians. Furthermore, as the ALJ provided a clear articulate reason for discrediting the treating physician, there was no error in the ALJ's assessment of this treating or State Agency physicians' opinions.

### B. Failure to Discuss Medication and Side-Effects

Plaintiff also argues that the ALJ erred because despite Plaintiff's testimony regarding her extreme drowsiness due to medication side effects, the ALJ failed to address the issue. (Pl.'s Br., p. 13). Furthermore, Plaintiff argues that the ALJ failed to consult a Vocational Expert to determine whether this non-exertional impairment (the side effects caused by the medications) would affect the occupations available to Plaintiff. (Id. at 13-14). The Commissioner, on the other hand, argues that although Plaintiff testified at the hearing that she had discussed the problems she was having with the side effects to her medications with Dr. Kirk, these discussions were not noted in his treatment records. (Comm'r Br., p. 8). The Commissioner also provides that Plaintiff's hearing testimony is contradicted by the

9

record because "[w]hen reporting to the SSA about her medical history she was asked about the medications she used and expressly said these did not cause side-effects." (Id.). Plaintiff has the better argument.

An ALJ fails in his duty to develop fully the record when he does not make findings about the effect of prescribed medication on a claimant's ability to work. Cowart v. Schweiker, 662 F.2d 731, 737 (11th Cir. 1981); see also Lacy v. Barnhart, 309 F. Supp.2d 1345, 1352 (N.D. Ala. 2004) (reversing denial of benefits where, *inter alia*, ALJ "failed to consider the effects of the side effects of plaintiff's medication"). As the Eleventh Circuit has explained, "It is conceivable that the side effects of medication could render a claimant disabled or at least contribute to a disability." Cowart, 662 F.2d at 737. The court in Cowart went to on to quote with approval the following language from a First Circuit case:

> The present record contains no medical evidence regarding whether appellant's medication was in "unusually large doses" or whether its side effects might conceivably be disabling. While appellant's claim might be exaggerated, a layman is in no position to make any such determination on this record. It would have been appropriate for the administrative law judge to have sought further medical evidence, or to have made some further inquiry, since appellant raised the question. At [the] very least, the administrative law judge should have made a finding on appellant's claim regarding side effects, making it possible for a reviewing tribunal to know that the claim was not entirely ignored.

Id. (internal citations omitted).

The Court recognizes that the ALJ in Cowart had a "special duty" to develop the record because the claimant was not represented at her administrative hearing. 662 F.2d at 735. However, the court in Cowart also specifically stated that an ALJ has a basic obligation to develop a full and fair record, even if the claimant is represented by counsel. Id.; see also

Miles v. Chater, 84 F.3d 1397, 1401 (11th Cir. 1996) (*per curiam*) (stating that ALJ is "duty-bound to develop a full and fair record"). As discussed below, the ALJ in this case did not discuss, let alone fully develop the record, concerning Plaintiff's medications.

The fact that Plaintiff had been prescribed medications for her medical problems is not in dispute. The record reveals that Plaintiff's list of medications included among others: Ferrous Sulfate, Potassium, Sulfameth Trimeth, Gabapentin, Prevacid, Propoxyphene N, Novolin. R. 61, 80, 86, 93, 193, 195, 226. Moreover, the fact that Plaintiff was taking medications that may impact her ability to work was mentioned by Plaintiff at the hearing. R. 317. Yet, nowhere in his opinion does the ALJ discuss the possible effects that the extensive list of medications taken by Plaintiff may have on her ability to work.

Even though the record is unclear as to the effect of the medications on Plaintiff, the sheer amount and variety of medications prescribed to Plaintiff cannot be ignored. Similar to the court's reasoning in Cowart, the record in this case contains no medical evidence regarding whether Plaintiff's medications were in "unusually large doses" or whether their side effects might conceivably be disabling. Likewise, while Plaintiff's claim might be exaggerated, a layman is in no position to make any such determination on this record. That being said, the Court is in no way making a determination on the credibility nor on the merits of Plaintiff's allegation that medications side effects affect her ability to perform work related activities. The Court simply concludes that the record needs to be developed further concerning the effects that Plaintiff's medications have on her. In light of the quantity of medications reportedly taken by Plaintiff (Ferrous Sulfate, Potassium, Sulfameth Trimeth, Gabapentin, Prevacid, Propoxyphene N, Novolin), and the ALJ's failure to consider the

medications potential side-effects, a sentence four remand is warranted on this issue.

The Court is aware that the Commissioner offers that, although Plaintiff testified at the hearing that she had discussed the problems she was having with the side effects of her medications with Dr. Kirk, these discussions were not noted in his treatment records. (Comm'r Br., p. 8). The Commissioner also provides that Plaintiff's hearing testimony is contradicted by the record because "[w]hen reporting to the SSA about her medical history she was asked about the medications she used and expressly said these did not cause side-effects." (Id.). Thus, the Commissioner concludes that the "medical reports simply do not bear out plaintiff's claims of severe side-effects." (Id.).

The Commissioner, relying on Johnson v. Barnhart, 138 Fed. App'x 266, *3 (11th Cir. June 29, 2005), maintains, "The lack of mention of supposed severe side effects to treating sources is a relevant consideration in assessing the credibility of claims as to the severity of such symptoms." Notably, however, in Johnson, "the ALJ considered as noteworthy the fact that [the claimant] never told her physicians about this side effect from her medications." Id. at *2. Thus, in Johnson, the ALJ considered the alleged side effects of the medication and the ALJ considered that the claimant had not told her physicians about the side effects. In the case *sub judice*, the record does not reflect that the ALJ made any such determinations. Similarly, the Commissioner, in opposition to Plaintiff's brief, states that the medical reports did not bear out Plaintiff's claims of severe side-effect. However, this is a determination that the ALJ should have made, but did not. Notably, this Court cannot now engage in an administrative review that was not done in the first instance by the Commissioner via the ALJ. Martin v. Heckler, 748 F.2d 1027, 1031 (5th Cir. 1984) (noting

it to be "inappropriate on judicial review for the first time to apply administrative criteria not themselves considered by the [Commissioner]"). Indeed, as noted above, the Court's "limited review [of the record] precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence." Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (*per curiam*) (citing Bloodsworth, 703 F.2d at 1239).

In sum, the ALJ failed to properly acknowledge the wide-ranging medications prescribed to Plaintiff, let alone address the side effects of Plaintiff's medications, and the Court cannot now excuse this error as harmless based on the Commissioner's post-hoc assessment of the record.[3] Cf. Wiggins, 679 F.2d at 1390 (remanding where the ALJ failed

---

[3]In light of the recommendation for remand to properly consider the side effects of Plaintiff's medications, the Court need not resolve Plaintiff's argument that the ALJ failed to consult a Vocational Expert to determine whether this non-exertional impairment (the side effects caused by the medications) would affect the occupations available to Plaintiff. (Pl.'s Br., pp. 13-14). Of course, on remand, Plaintiff's claims must be evaluated in compliance with the applicable regulations and case law in all aspects. For example, should it be determined that Plaintiff had a non-exertional impairment, the ALJ may have to consult a VE.

As the Eleventh Circuit has ruled:

> The general rule is that after determining the claimant's RFC and ability or inability to return to past relevant work, the ALJ may use the grids to determine whether other jobs exist in the national economy that a claimant is able to perform. However, "[e]xclusive reliance on the grids is not appropriate *either* when [the] claimant is unable to perform a full range of work at a given residual functional level *or* when a claimant has non-exertional impairments that significantly limit basic work skills." Therefore, we must determine whether *either* of these two conditions exists in this case. If *either* condition exists, the ALJ was required to consult a vocational expert.

Phillips v. Barnhart, 357 F.3d 1232, 1242 (11th Cir. 2004) (internal citations omitted) (emphasis in original); see also McGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986) ("When there have been non-exertional factors (such as depression and medication side effects) *alleged*, the preferred method of demonstrating that the claimant can perform specific work is through the testimony of a vocational expert." (Emphasis added)).

to mention the claimant's treating physician and the court could not "determine whether the ALJ applied the proper legal standard and gave the treating physician's evidence substantial or considerable weight or found good cause not to do so"); see also Mills v. Astrue, 226 Fed. Appx. 926, 932 (11th Cir. Apr. 3, 2007) (*per curiam*) ("A court cannot excuse the denial of a mandatory procedural protection simply because . . . there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely." (citation omitted)).

## IV. CONCLUSION

For the reasons set forth above, the Court concludes that as Plaintiff's medications and its possible side-effects have not been considered, the Court **REPORTS** and **RECOMMENDS**, pursuant to sentence four of 42 U.S.C. § 405(g), that the Commissioner's final decision be **REVERSED** and that the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

SO REPORTED and RECOMMENDED this /2th day of November, 2009, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

14